Matter of Ment v Onondaga County Comm. of Conservative Party of N.Y. State (2026 NY Slip Op 01675)

Matter of Ment v Onondaga County Comm. of Conservative Party of N.Y. State

2026 NY Slip Op 01675

Decided on March 20, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 20, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CURRAN, J.P., MONTOUR, SMITH, AND OGDEN, JJ.

192 CAE 25-00268

[*1]IN THE MATTER OF BERNARD MENT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF ONONDAGA COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE AND COMMITTEE MEMBER DEWITT DISTRICT 9, JOHN A. MULHALL, INDIVIDUALLY AND AS A FORMER CHAIRPERSON OF ONONDAGA COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE AND COMMITTEE MEMBER VANBUREN DISTRICT 9, THOMAS. DADEY, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS VICE CHAIR AT LARGE PERSON OF ONONDAGA COUNTY COMMITTEE OF CONSERVATIVE PARTY OF NEW YORK STATE AND COMMITTEE MEMBER DEWITT DISTRICT 3, PAUL F. BECALLO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CICERO TOWN CHAIR OF ONONDAGA COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE AND COMMITTEE MEMBER CICERO DISTRICT 22 AND SUSAN T. VICKERS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS CAMILLUS TOWN CHAIR OF ONONDAGA COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE AND COMMITTEE MEMBER CAMILLUS DISTRICT 11, PETITIONERS-PLAINTIFFS-APPELLANTS, V
vONONDAGA COUNTY COMMITTEE OF CONSERVATIVE PARTY OF NEW YORK STATE, ROBERT GRAHAM, IN HIS CAPACITY AS EXECUTIVE VICE-CHAIR AND VICE-CHAIR-AT-LARGE OF ONONDAGA COUNTY COMMITTEE OF THE CONSERVATIVE PARTY
OF NEW YORK STATE, NANCY ROBERTS, IN HER CAPACITY AS SECRETARY OF ONONDAGA COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE, CHRISTINE VARGA, IN HER CAPACITY AS PUTATIVE CHAIR OF ORGANIZATION MEETING OF OCTOBER 6, 2024 OF ONONDAGA COUNTY COMMITTEE OF THE CONSERVATIVE PARTY OF NEW YORK STATE, NEW YORK STATE BOARD OF ELECTIONS AND ONONDAGA COUNTY BOARD OF ELECTIONS, RESPONDENTS-DEFENDANTS-RESPONDENTS. (APPEAL NO. 1.) 

AARON MARK ZIMMERMAN, ESQ., P.C., SYRACUSE (AARON M. ZIMMERMAN OF COUNSEL), AND GARY J. LAVINE, FOR PETITIONERS-PLAINTIFFS-APPELLANTS.
ROBERT F. JULIAN, UTICA, FOR RESPONDENTS-DEFENDANTS-RESPONDENTS.

 Appeal from a judgment (denominated order) of the Supreme Court, Onondaga County (William F. Ramseier, J.), entered February 6, 2025, in a proceeding pursuant to Election Law article 16 and CPLR article 78 and declaratory judgment action. The judgment, inter alia, granted the motion of certain respondents-defendants to dismiss and dismissed the petition. 
It is hereby ORDERED that said appeal from the judgment insofar as taken by petitioner-plaintiff Bernard Ment, individually and as Chairperson of Onondaga County Committee of the Conservative Party of New York State and Committee Member Dewitt District 9, is unanimously dismissed and the judgment is modified on the law by denying the cross-motion in part, [*2]reinstating the amended petition-complaint to the extent that it seeks declaratory relief, and granting judgment in favor of respondents-defendants as follows:
It is ADJUDGED AND DECLARED that the organizational
meeting of respondent-defendant Onondaga County Committee of Conservative Party of New York State was properly held on October 6, 2024, that a quorum at that meeting was properly established, and that the resulting certificates of election filed with respondents-defendants Onondaga County Board of Elections and New York State Board of Elections certifying the election of officers at that meeting were properly filed, and as modified the judgment is affirmed without costs.
Memorandum: Petitioners-plaintiffs (petitioners) commenced this hybrid proceeding-action (proceeding) pursuant to CPLR article 78, CPLR 3001, and Election Law article 16 seeking, inter alia, to invalidate certificates of election filed with respondents-defendants Onondaga County Board of Elections and New York State Board of Elections (collectively, Boards of Elections), which certified the election of officers of respondent-defendant Onondaga County Committee of Conservative Party of New York (OCCP) following an organizational meeting held on October 6, 2024 (October meeting). Thereafter, petitioners moved by order to show cause seeking relief on their amended petition-complaint (petition), and OCCP and respondents-defendants Robert Graham, in his capacity as executive vice-chair and vice-chair-at-large of OCCP, Nancy Roberts, in her capacity as secretary of OCCP, and Christine Varga, in her capacity as putative chair of Organization Meeting of October 6, 2024 of OCCP (collectively, respondents), answered and cross-moved to dismiss the petition in its entirety pursuant to, inter alia, CPLR 3211 (a) (7). Petitioners now appeal, in appeal No. 1, from a judgment that denied their motion by order to show cause and granted respondents' cross-motion. In appeal No. 2, petitioners appeal from an order that denied their motion for leave to reargue and renew their opposition to the cross-motion.
This proceeding arises out of an internecine conflict between two factions concerning the leadership of OCCP that started in 2023. Among the petitioners is the late Bernard Ment, who is named individually and as chairperson of OCCP and Committee Member Dewitt District 9. One of the competing factions is represented by petitioners, including Ment, who served as the chairperson of OCCP until the October meeting. The other faction is represented by, inter alia, Varga, who was elected chairperson of OCCP at that contested October meeting.
By way of background, pursuant to the Election Law and its own bylaws, OCCP elects members every two years following a primary election (see generally Election Law §§ 2-104, 2-106 [1], [3]). Following the biennial election of its members, OCCP is required to hold an organizational meeting within a certain time following the primary for the purpose of electing officers for the committee, including, inter alia, the chairperson and the executive vice-chairperson (see § 2-112 [1]). According to OCCP's bylaws, it is the duty of the chairperson to call for and preside at the organizational meeting. The officers elected at the organizational meeting become members of OCCP's executive committee, which, according to the bylaws, possesses and exercises "all the rights, privileges, powers and duties which [OCCP] may have, possess, and exercise," while OCCP is not in session.
Here, following the 2024 primary election, the faction associated with Varga was poised to take control of OCCP and elect its own slate of officers. According to respondents, petitioners' faction sought to disenfranchise the competing faction by preventing them from electing new officers. Specifically, it is alleged that Ment, as chairperson, refused to fulfill his duty to call for the organizational meeting, which would result in the disintegration of OCCP, allowing leadership of the committee to devolve to nonparty State Committee of the Conservative Party of New York State, which would, in turn, purportedly appoint a temporary executive committee of OCCP friendly to petitioners' faction. Indeed, during the relevant time frame, Ment did not call for any meeting, and—by his own admission—stopped responding to all calls, texts, and emails from members of OCCP.
In light of Ment's absence, and pursuant to the bylaws, Graham, OCCP's executive vice-chairperson, acted to ensure that the organizational meeting was held during the relevant time frame. To that end, he called for a monthly meeting of OCCP to be held on September 17, 2024 [*3](September meeting), at which time OCCP's executive committee approved proxy forms to be used at the upcoming October meeting, i.e., the organizational meeting that was scheduled for October 6, 2024. To further ensure that the organizational meeting was held on October 6, 2024, some members of OCCP circulated a petition for members to sign, which called for an organizational meeting to be held on that day. Ultimately, compliant with the relevant provision of the bylaws, those calling for an organizational meeting obtained the necessary signatures of 20% of OCCP membership on the petition.
At the October meeting, signed proxy forms—which had been approved at the September meeting—were used to establish a quorum. Subsequently, OCCP membership elected a new executive committee, replacing Ment and petitioners' faction. Within three days of the October meeting, signed certificates of election of the new leadership were submitted to the Boards of Election, as required by statute (see Election Law § 2-112 [1] [d]).
Thereafter, as noted above, petitioners commenced this proceeding seeking, inter alia, to invalidate the September and October meetings, contending that they were unlawfully held, and to invalidate the election of the new OCCP officers and the resulting certificates of election. In seeking to invalidate the foregoing, petitioners requested, inter alia, declaratory relief to that effect.
Initially, we dismiss both appeals insofar as taken by Ment inasmuch as he is deceased, his death does not affect the merits of the case, and there is no need for strict adherence to the requirement that the proceeding be stayed pending substitution (see CPLR 1015 [b]; DiMarco Constructors, LLC v Top Capital of N.Y. Brockport, LLC, 236 AD3d 1342, 1343 [4th Dept 2025]; Matter of London, 200 AD3d 493, 493-494 [1st Dept 2021]).
With respect to appeal No. 1, petitioners contend that, for a number of reasons, Supreme Court erred in granting the cross-motion and in denying the relief requested in the petition under Election Law § 16-102. To establish their entitlement to relief under Election Law § 16-102, petitioners were required to "make a clear showing that the notice for and conduct of the . . . organizational meeting violated the Election Law, or involved such fraud or irregularities as would render it impossible to determine who was rightfully nominated or elected at the meeting" (Matter of Lehrer v Cavallo, 43 AD3d 1059, 1061 [2d Dept 2007], lv dismissed in part & denied in part 9 NY3d 1001 [2007]; see Election Law § 16-102 [3]). We note at the outset that "internal issues arising within political parties are best resolved within the party organization itself and judicial involvement should only be undertaken as a last resort" (Matter of Bachmann v Coyne, 99 AD2d 742, 742 [2d Dept 1984], lv denied 61 NY2d 607 [1984]). Indeed, "[j]udicial intervention is warranted only upon a clear showing that a party or its leaders have violated th[e] [Election Law] or the party's own rules adopted in accordance with law, or otherwise violat[ed] the rights of party members or the electorate" (Matter of Nitti v Reilich, 153 AD3d 1131, 1132 [4th Dept 2017], lv denied 29 NY3d 915 [2017] [internal quotation marks omitted]).
Petitioners contend, specifically, that the court erred in determining that proxy forms submitted at the October meeting were properly approved pursuant to OCCP bylaws, and therefore no quorum was established for the October meeting. We reject that contention. Petitioners' assertion that the proxies were invalid is based, in part, on their argument that the September meeting, where the proxies were purportedly approved, was not validly called, and therefore the certificates of election were "null and void" (Matter of Firestone v MacKay, 306 AD2d 346, 347 [2d Dept 2003], lv denied 100 NY2d 508 [2003]). We conclude that the court properly determined that, under the circumstances, the September meeting was validly called. Pursuant to OCCP's bylaws, the executive vice-chairperson of the committee "shall" fulfill the chairperson's duties—which include the authority to call and preside over meetings—when the chairperson is "absen[t]." Here, it is undisputed that Ment—OCCP's chairperson at the time of the September meeting—had intentionally absented himself by remaining incommunicado with OCCP members, not attending the September meeting, and affirmatively stating that he was intentionally forgoing his duty and obligation to call for an organizational meeting. Under those circumstances, the executive vice-chairperson was empowered to call for the meeting. Indeed, we note that OCCP was required, by law and its own bylaws, to hold an organizational meeting (see Election Law § 2-112 [1] [b]), and that the executive vice-chairperson was acting in accordance with that requirement. We further note that, contrary to petitioners' assertion, there is nothing in the bylaws that requires the executive vice-chairperson to make a formal finding that [*4]the chairperson is absent before exercising the duties of the chairperson.
Additionally, petitioners contend that the proxies used at the October meeting were invalid because the OCCP executive committee did not properly approve them with respect to their form and content at the September meeting and, therefore, the proxies were unable to establish a quorum at the October meeting. We reject that contention as well. OCCP bylaws provide, in relevant part, that a "proxy must designate another member of [OCCP] as proxy of the member," and that "[t]he proxy shall be confined to a specific meeting of [OCCP], and must be evidenced by an authorization in writing, and fully filed with the Secretary of the meeting for which the proxy is given." Further, "[t]o be valid a proxy signature must be witnessed by a member of the Conservative Party." "The form and content of proxies shall be as approved by the County Executive Committee." Here, the record establishes that the OCCP executive committee approved the form and content of the proxies at the September meeting, which we note was done using the same proxy form that had been used by OCCP in the past. We reject petitioners' argument that the proxies were not properly approved with respect to form and content insofar as the proxies did not include the specific time, date, and location of the organizational meeting. That information is only relevant to establishing that the proxies were "confined to a specific meeting," which was already established by the forms to the extent that they specifically delineated that the proxies were to be used at the organizational meeting. The proxy forms approved at the September meeting otherwise complied with the bylaws.
Petitioners also contend, with respect to appeal No. 1, that the court erred inasmuch as it treated the parties unequally—i.e., that it held petitioners to strict compliance with OCCP's bylaws, while excusing defects in respondents' compliance therewith. We reject that contention inasmuch as, for the reasons explained above, we conclude that the record shows that petitioners—and, in particular, Ment—did not comply with the bylaws by intentionally declining to call the statutorily required organization meeting and that, in contrast, respondents—and, in particular, Graham—complied with the bylaws in taking steps, in Ment's absence, to ensure that the organizational meeting was conducted. We conclude, on the record before us, that there is no evidence establishing that the court treated the parties unequally or that it applied different standards to different parties in evaluating their conduct.
However, while we conclude that petitioners' contentions in appeal No. 1 lack merit, we further conclude under the circumstances here that the court should have issued a declaration of the parties' rights rather than dismissing the petition in its entirety (see generally Maurizzio v Lumbermens Mut. Cas. Co., 73 NY2d 951, 954 [1989]). We note that a declaration is appropriate in the context of the cross-motion to dismiss pursuant to CPLR 3211 (a) (7) in the absence of any issues of fact (see Plaza Dr. Group of CNY, LLC v Town of Sennett, 115 AD3d 1165, 1166 [4th Dept 2014]; Matter of Max v Ward, 107 AD3d 1597, 1601 [4th Dept 2013]; see generally David D. Siegel & Patrick M. Connors, New York Practice § 440 at 848 [6th ed 2018]). We therefore modify the order in appeal No. 1 by denying the cross-motion in part, reinstating the petition to the extent that it seeks declaratory relief, and declaring that the October meeting was properly held, that a quorum at that meeting was properly established, and that the resulting certificates of election certifying the election of OCCP officers at the October meeting were properly filed.
With respect to appeal No. 2, we note that the appeal from the order insofar as it denied that part of petitioners' motion seeking leave to reargue must be dismissed because no appeal lies therefrom (see McGirr v Zurbrick [appeal No. 2], 217 AD3d 1462, 1463 [4th Dept 2023], lv denied 41 NY3d 902 [2024]; MidFirst Bank v Storto, 121 AD3d 1575, 1575 [4th Dept 2014]; Empire Ins. Co. v Food City, 167 AD2d 983, 984 [4th Dept 1990]).
Petitioners are permitted to appeal as of right, however, from the order insofar as it denied that part of the motion seeking leave to renew (see CPLR 5701 [a] [2] [viii]). Nonetheless, we conclude that the court did not abuse its discretion in denying that part of petitioners' motion. "[A] motion for leave to renew must be based upon new facts not offered on the prior motion that would change the prior determination, and shall contain reasonable justification for the failure to present such facts on the prior motion" (2006905 Ontario Inc. v Goodrich Aerospace Can., Ltd., 206 AD3d 1607, 1607-1608 [4th Dept 2022] [internal quotation marks omitted]; see CPLR 2221 [e] [2], [3]). Here, we conclude that the court did not err in denying that part of petitioners' motion seeking leave to renew because all the facts relied upon by petitioners in support thereof [*5]had been brought to the court's attention previously—i.e., the motion did not allege any new facts not previously offered (see Jones v City of Buffalo School Dist., 94 AD3d 1479, 1479 [4th Dept 2012]; Carroway Luxury Homes, LLC v Integra Supply Corp., 57 AD3d 1448, 1449 [4th Dept 2008]; cf. Tishman Constr. Corp. of N.Y. v City of New York, 280 AD2d 374, 376-377 [1st Dept 2001]).
Entered: March 20, 2026
Ann Dillon Flynn
Clerk of the Court